## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Joel G. MacMull (JM 8239)
**ARCHER & GREINER, P.C.**
44 Wall Street, Suite 1285
New York, New York 10005
Tel.: 201-498-8518
Fax: 201-342-6611
jmacmull@archerlaw.com

*Attorneys for Plaintiff Mul-T-Lock, USA, Inc.*

|  |  |
|---|---|
| MUL-T-LOCK USA, INC., a Maryland corporation, | Civil Action No.<br><br>17-cv-4798 |
| *Plaintiff,* | |
| v. | **COMPLAINT**<br>**AND JURY DEMAND** |
| ACCESS LOCKSMITH & SECURITY INC., and RENE LORA, Individually; AMAZON LOCKSMITH INC. d/b/a SHIELD LOCKSMITH and HAIM YAAKOV, Individually; BIG BROTHER'S DISCOUNT HARDWARE & APP., INC. and MOHAN RAMNUTH, Individually; GOLDEN KEY LOCKSMITH INC. and ABRAHAM BARUCH, Individually; and WORLD HOUSEWARES & HARDWARE INC. and JOHN DOES 1-3, Inclusive, | |
| *Defendants.* | |

Plaintiff Mul-T-Lock USA, Inc. ("plaintiff"), by its undersigned counsel, complains and states as follows:

## THE PARTIES

1.     Plaintiff is a corporation organized and existing under the laws of State of Maryland, having its principal place of business located at 100 Commerce Way, Suite 2, Hackensack, New Jersey 07601.

2.     Defendant Access Locksmith & Security Inc. ("Access") is a corporation, organized and existing under the laws of the State of New York, having its principal place of business located at 186 5th Avenue, New York, New York 10010.

3.     Defendant Rene Lara ("Lara"), whose domicile is presently unknown to plaintiff, is an individual who, upon information and belief, has sold to defendant Access, assisted in reselling the counterfeit items, or facilitated the breaches complained of herein.

4.     Defendant Amazon Locksmith Inc. d/b/a Shield Locksmith ("Amazon") is a corporation, organized and existing under the laws of the State of New York, having its principal place of business located at 2669 Broadway, New York, New York 10025.

5.     Defendant Haim Yaakov ("Yaakov"), whose domicile is presently unknown to plaintiff, is an individual who, upon information and belief, has sold to defendant Amazon, assisted in reselling the counterfeit item, or facilitated the breaches complained of herein.

6.     Defendant Big Brother's Discount Hardware & App. Inc. ("Big Brother") is a corporation, organized and existing under the laws of the State of New York, having its principal place of business located at 1327 Fulton Street, Brooklyn, New York 11216.

7.     Defendant Mohan Ramnuth ("Ramnuth") whose domicile is presently unknown to plaintiff, is an individual who, upon information and belief, has sold to defendant Big Brother, assisted in reselling the counterfeit items, or facilitated the breaches complained of herein.

8.     Defendant Golden Key Locksmith Inc. ("Golden Key") is a corporation, organized and existing under the laws of the State of New York, having its principal place of business located at 328 Columbus Avenue, New York, New York 10023.

9.     Defendant Abraham Baruch ("Baruch") whose domicile is presently unknown to plaintiff, is an individual who, upon information and belief, has sold to defendant Golden Key, assisted in reselling the counterfeit items, or facilitated the breaches complained of herein.

10.    Defendant World Housewares & Hardware Inc. ("World Housewares") is a corporation, organized and existing under the laws of the State of New York, having its principal place of business located at 2617 Broadway, New York, New York 10025.

## JURSIDICTION AND VENUE

11.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b) and 15 U.S.C. §§ 1116. This Court has supplemental jurisdiction over plaintiff's claims under the laws of the State of New York pursuant to 28 U.S.C. § 1367.

12.    This Court has personal jurisdiction over each of the corporate defendants in that they are duly incorporated under the laws of New York, maintain a principal place of business in the State of New York, and were responsible for and participated in the illegal activity described in this Complaint, including the purchase, sale and delivery of counterfeit goods bearing plaintiff's trademarks in the State of New York, and regularly conduct business in the State of New York.

13.    This Court has personal jurisdiction over each of the individual defendants, in that they are, upon information and belief, shareholders, partners or proprietors of each of the corporate

defendants, and, upon information and belief, imported, sold or assisted the corporate defendants in reselling the counterfeit goods or otherwise facilitating the breaches complained of herein.

14.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) because the facts giving rise to the acts or omissions alleged herein took place in this district and because the defendants are subject to personal jurisdiction in this district.

## BACKGROUND FACTS

### Mul-T-Lock Trademarks and Products

15.     Mul-T-Lock Technologies Ltd. ("MTL Tech."), through its licensees and predecessors-in-interest, is a leader in developing, manufacturing and marketing high-security products in product categories that include multiple high-quality and technical locking solutions for institutional, commercial, industrial and residential applications (the "MTL Products"). For over forty years, MTL Tech's reputation for leading edge design and innovative products has developed and expanded across multiple products and markets.

16.     MTL Tech. is an Israeli-based corporation and the parent of plaintiff, has licensed the right to use the MUL-T-LOCK® family of registered trademarks and is the owner of the entire right, title and interest in and to, *inter alia*, the following federally-registered trademarks and/or service marks:

| Registration/Serial Number | Trademark/ Service mark | Goods And Services | Date Of First Use In Commerce |
|---|---|---|---|
| 3,917,925 | MUL-T-LOCK | VEHICLE ANTI-THEFT DEVICES, NAMELY, VEHICLE GEARSHIFT LOCKS, STEERING WHEEL LOCKS, KINGPIN LOCKS, AND TRAILER HITCH LOCKS, HANDLE BAR LOCKS; MOTOR VEHICLE LOCKS, NAMELY, POWER LOCKS AND MECHANICAL LOCKS. | 2010 |
| 3,793,119 | MUL-T-LOCK | INSTALLATION, REPAIR AND MAINTENANCE OF LOCKS, CYLINDERS AND KEYS. | 1975 |
| 3,587,589 | MUL-T-LOCK | ELECTRIC, ELECTRONIC AND ELECTROMECHANICAL LOCKS AND LOCK GOODS, NAMELY, ELECTRONIC LOCK CYLINDERS, ELECTRIC STRIKING PLATES, DOOR MAGNETS, ELECTRONIC KEYS, KEY CARDS, NAMELY, ELECTRONIC OR MAGNETIC ACCESS CONTROL CARDS AND BLANK SMART CARDS, CODED TO LOCK/KEY INFORMATION SMART CARDS, AND KEY CARD READERS; ELECTRONIC OR MAGNETIC ACCESS CONTROL CARD READERS AND SMART CARD READERS; UNITS FOR PROGRAMMING LOCKS, LOCK CYLINDERS, KEYS, KEY CARDS AND KEY CARD READERS, NAMELY, COMPUTER AND COMPUTER ATTACHMENTS FOR PROGRAMMING LOCKS, LOCK CYLINDERS, KEYS, KEY CARDS, AND KEY CARD READERS; ELECTROMECHANICAL AND ELECTRO HYDRAULICAL DOOR OPENERS, DOOR CLOSERS AND DOOR OPERATORS; ELECTRIC AND ELECTRO MECHANICAL DOOR AND WINDOW HARDWARE, NAMELY, ELECTRONIC DOOR AND WINDOW OPENERS; ELECTRONIC AND MAGNETIC SENSORS, NAMELY, PROXIMITY SENSORS, PRESSURE SENSORS, CONTACT SENSORS, MAGNETIC SENSORS; APPARATUS AND INSTRUMENTS FOR SIGNALING AND CHECKING, NAMELY, SENSORS FOR CHECKING AND/OR CONTROLLING PEOPLES MOVEMENT WITHIN, ENTRANCE TO AND EXIT FROM BUILDINGS AND THROUGH DOORS AND GATES AND/OR FOR USE WITH LOCKS; MAGNETIC AND ELECTRONIC IDENTITY CARDS; BLANK AND CODED TO LOCK/KEY INFORMATION MAGNETIC DATA CARRIERS; COMPUTER SOFTWARE, NAMELY, SOFTWARE FOR MANAGEMENT OF KEYING SYSTEMS. | 2004 |

| Registration/Serial Number | Trademark/ Service mark | Goods And Services | Date Of First Use In Commerce |
|---|---|---|---|
| 1,594,852 |  | STEEL DOORS, LOCKS, PADLOCKS, KEYS, SAFES, LOCK CYLINDERS, LOCKS OF METAL FOR VEHICLES, METAL HASPS, METAL SHACKLE PROTECTORS FOR PADLOCKS, TOOTHED GEAR FOR LOCK CYLINDERS. | 1977 |
| 1,118,617 |  | LOCKS, KEYS AND SAFES. | 1975 |
| 3,587,860 |  | ELECTRIC, ELECTRONIC AND ELECTROMECHANICAL LOCKS AND LOCK GOODS, NAMELY, ELECTRONIC LOCK CYLINDERS, ELECTRIC STRIKING PLATES, DOOR MAGNETS, ELECTRONIC KEYS, KEY CARDS, NAMELY, ELECTRONIC OR MAGNETIC ACCESS CONTROL CARDS AND BLANK SMART CARDS, CODED TO LOCK/KEY INFORMATION SMART CARDS, AND KEY CARD READERS; ELECTRONIC OR MAGNETIC ACCESS CONTROL CARD READERS AND SMART CARD READERS; UNITS FOR PROGRAMMING LOCKS, LOCK CYLINDERS, KEYS, KEY CARDS AND KEY CARD READERS, NAMELY, COMPUTER AND COMPUTER ATTACHMENTS FOR PROGRAMMING LOCKS, LOCK CYLINDERS, KEYS, KEY CARDS, AND KEY CARD READERS; ELECTROMECHANICAL AND ELECTRO HYDRAULICAL DOOR OPENERS, DOOR CLOSERS AND DOOR OPERATORS; ELECTRIC AND ELECTRO MECHANICAL DOOR AND WINDOW HARDWARE, NAMELY, ELECTRONIC DOOR AND WINDOW OPENERS; ELECTRONIC AND MAGNETIC SENSORS, NAMELY, PROXIMITY SENSORS, PRESSURE SENSORS, CONTACT SENSORS, MAGNETIC SENSORS; APPARATUS AND INSTRUMENTS FOR SIGNALING AND CHECKING, NAMELY, SENSORS FOR CHECKING AND/OR CONTROLLING PEOPLES MOVEMENT WITHIN, ENTRANCE TO AND EXIT FROM BUILDINGS AND THROUGH DOORS AND GATES AND/OR FOR USE WITH LOCKS; MAGNETIC AND ELECTRONIC IDENTITY CARDS; BLANK AND CODED TO LOCK/KEY INFORMATION MAGNETIC DATA CARRIERS; COMPUTER SOFTWARE, NAMELY, SOFTWARE FOR MANAGEMENT OF KEYING SYSTEMS. | 2004 |

| Registration/Serial Number | Trademark/ Service mark | Goods And Services | Date Of First Use In Commerce |
|---|---|---|---|
| 2,474,593 |  | CYLINDER LOCKS AND PADLOCKS, MORTISE CYLINDER LOCKS, GEAR LOCKS, KEYS, KEY BLANKS AND PARTS AND FITTINGS FOR THE AFORESAID. | 1980 |
| 1,065,655 | MUL-T-LOCK | LOCKS AND BOLTS | 1975 |
| 1,598,146 | MUL-T-LOCK | STEEL DOORS, LOCKS, PADLOCKS, KEYS, SAFES, LOCK CYLINDERS, LOCKS OF METAL FOR VEHICLES, METAL HASPS, METAL SHACKLE PROTECTORS FOR PADLOCKS, TOOTHED GEAR FOR LOCK CYLINDERS. | 1977 |
| 3,587,859 | MUL-T-LOCK | ELECTRIC, ELECTRONIC AND ELECTROMECHANICAL LOCKS AND LOCK GOODS, NAMELY, ELECTRONIC LOCK CYLINDERS, ELECTRIC STRIKING PLATES, DOOR MAGNETS, ELECTRONIC KEYS, KEY CARDS, NAMELY, ELECTRONIC OR MAGNETIC ACCESS CONTROL CARDS AND BLANK SMART CARDS, CODED TO LOCK/KEY INFORMATION SMART CARDS, AND KEY CARD READERS; ELECTRONIC OR MAGNETIC ACCESS CONTROL CARD READERS AND SMART CARD READERS; UNITS FOR PROGRAMMING LOCKS, LOCK CYLINDERS, KEYS, KEY CARDS AND KEY CARD READERS, NAMELY, COMPUTER AND COMPUTER ATTACHMENTS FOR PROGRAMMING LOCKS, LOCK CYLINDERS, KEYS, KEY CARDS, AND KEY CARD READERS; ELECTROMECHANICAL AND ELECTRO HYDRAULICAL DOOR OPENERS, DOOR CLOSERS AND DOOR OPERATORS; ELECTRIC AND ELECTRO MECHANICAL DOOR AND WINDOW HARDWARE, NAMELY, ELECTRONIC DOOR AND WINDOW OPENERS; ELECTRONIC AND MAGNETIC SENSORS, NAMELY, PROXIMITY SENSORS, PRESSURE SENSORS, CONTACT SENSORS, MAGNETIC SENSORS; APPARATUS AND INSTRUMENTS FOR SIGNALING AND CHECKING, NAMELY, SENSORS FOR CHECKING AND/OR CONTROLLING PEOPLES MOVEMENT WITHIN, ENTRANCE TO AND EXIT FROM BUILDINGS AND THROUGH DOORS AND GATES AND/OR FOR USE WITH LOCKS; MAGNETIC AND ELECTRONIC IDENTITY CARDS; BLANK AND CODED TO LOCK/KEY INFORMATION MAGNETIC DATA CARRIERS; COMPUTER SOFTWARE, NAMELY, SOFTWARE FOR MANAGEMENT OF KEYING SYSTEMS | 2004 |

17.     Attached hereto as <u>Exhibit 1</u> are true and correct copies of printouts from the United States Patent & Trademark Office ("USPTO") website evidencing MTL Tech's ownership of the aforementioned trademarks.

18.     All of the registrations set forth in <u>Exhibit 1</u> are valid, subsisting, unrevoked and uncancelled.

19.     Additionally, all of the aforementioned U.S. Registration numbers identified above are incontestable.

20.     MTL Tech. and plaintiff (collectively referred to hereinafter as "MTL") also own common law rights and rights arising under the laws of the State of New York in the above and other marks for use in connection with high security locks. These registered, common law and state statutory trademarks are collectively referred to as the "MTL Marks."

21.     The MTL Marks have been widely promoted, both in the United States and throughout the world. MTL's Products are marketed worldwide via multiple selling units and distributors located in Africa, Europe, the Middle East and North and South America. Since 1984, Mul-T-Lock's U.S. operation has grown to include over one thousand authorized dealers.

22.     The MTL Marks are among the world's most famous and widely recognized high-security locking devices, and the public, consumers, government, healthcare, educational and industrial industries have come to rely on and recognize that the MTL Products associated with the MTL Marks originate exclusively with MTL. Customers, potential customers, and other members of the public and industry associate the MTL Products with exceptional materials, security and performance.

23. MTL maintains strict quality control standards for all of the MTL Products. All genuine MTL Products are inspected and approved by MTL prior to distribution and sale. All genuine MTL Products are distributed through MTL's worldwide network of authorized dealers.

24. MTL and its affiliated companies own and use numerous trade names comprising the designations: "Mul-T-Lock, Ltd.," "Mul-T-Lock Technologies Ltd," and "Mul-T-Lock USA, Inc.," which are designations under which MTL and its affiliated companies do business.

25. MTL displays its MTL Marks and MTL Products in its advertising and promotional materials. To date, MTL has spent millions of dollars in advertising and promoting the MTL Marks and MTL Products, and MTL, its predecessors-in-interest and its affiliated companies have enjoyed millions of dollars in sales.

26. MTL's continuous and broad use of the MTL Marks has expanded their renown and enabled the MTL Marks to achieve fame and celebrity in their various product markets.

27. MTL's continued success depends on consumer confidence in MTL's various product lines.

28. MTL has, since its inception, championed the unparalleled quality and sophistication of its high-security solutions.

29. Consumer confidence in the superior nature and performance of MTL's Products, which utilize the MTL Marks, has been and continues to be substantially eroded by defendants' conduct as alleged herein. *Inter alia*, defendants' conduct undermines consumers' confidence in the quality and performance of MTL's Products, and derivatively, MTL's goodwill which has accrued over time.

**Defendants' Unlawful Acts**

30.     On or about June 11, 2007, Lora, on behalf of defendant Access, entered into a Mul-T-Lock Locksmith Agreement ("Agreement") with plaintiff which set forth the terms of their relationship. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of this Agreement.

31.     On or about June 17, 1997, Yaakov, on behalf of defendant Amazon, entered into a Mul-T-Lock Locksmith Agreement ("Agreement") with plaintiff which set forth the terms of their relationship. Attached hereto as <u>Exhibit 3</u> is a true and correct copy of this Agreement.

32.     On or about December 2, 1998, Ramnuth, on behalf of defendant Big Brother, entered into a Mul-T-Lock Locksmith Agreement ("Agreement") with plaintiff which set forth the terms of their relationship. Attached hereto as <u>Exhibit 4</u> is a true and correct copy of this Agreement.

33.     On or about June 14, 1999, Baruch, on behalf of Golden Key, entered into a Mul-T-Lock Locksmith Agreement ("Agreement") with plaintiff which set forth the terms of their relationship. Attached hereto as <u>Exhibit 5</u> is a true and correct copy of this Agreement.

34.     On or about September 22, 2004, Doe, on behalf of World Housewares, entered into a Mul-T-Lock Locksmith Agreement ("Agreement") with plaintiff which set forth the terms of their relationship. Attached hereto as <u>Exhibit 6</u> is a true and correct copy of this Agreement.

35.     All of the foregoing Agreements contain materially identical terms and conditions.

36.     Defendants Lora, Yaakov, Ramnuth, Baruch and Doe personally guaranteed the full and faithful performance of their respective businesses, namely, Access, Amazon, Big Brother, Golden Key and World Housewares. Specifically, the aforementioned individual defendants contracted to the following provision:

I the undersigned, a shareholder, and/or partner and/or proprietor of the Locksmith, in order to further induce Mul-T-Lock to enter into this Agreement, hereby personally guarantee the full and faithful performance of all obligations of Locksmith under the terms of this Agreement.

37.     Plaintiff employs a team of field representatives, who continually service plaintiff's authorized licensees by providing support and supplying them with inventory.

38.     Operating on a tip from one of plaintiff's field representatives, Plaintiff learned that defendants were (1) duplicating MTL keys without requiring that customers present a valid MTL security identification card; and (2) duplicating and selling counterfeit MTL keys in violation of the Agreement.

39.     In an effort to verify whether defendants were in fact complying with their Agreements, plaintiff solicited the assistance of private investigators, posing as "secret shoppers." These secret shoppers visited defendants' stores in the fall of 2016.

40.     While visiting the corporate defendants' business locations, plaintiff's secret shoppers requested the duplication of a MTL key. At no time did the secret shoppers display a MTL security identification card.

41.     In response to the secret shopper's request, MTL's secret shopper received one (1) counterfeit key marked "Do Not Duplicate" displayed on each of the key heads. Each MTL secret shopper was charged varying amounts for their purchases.

42.     An MTL secret shopper purchased one (1) counterfeit key on November 3, 2016 from Access, as reflected on the sales receipt which was provided to MTL's secret shopper at the time of purchase.

43.     In connection with a purchase from Access on November 3, 2016, MTL's secret shopper was charged $27.21 for one (1) counterfeit MTL key.

44. Attached hereto as <u>Exhibit 7</u> is a true correct copy of the receipt provided to MTL's secret shopper from Access on November 3, 2016 for the cost of duplicating one (1) counterfeit MTL key.

45. Upon information and belief, an owner or employee of defendant Access used MTL's patented key cutting machine (U.S. Patent Registration No. 6,602,030) on November 3, 2016 to duplicate a counterfeit MTL key in breach of the Agreement.

46. An MTL secret shopper purchased one (1) counterfeit key from Amazon on October 7, 2016, as reflected on the sales receipt which was provided to MTL's secret shopper at the time of purchase.

47. In connection with a purchase from Amazon on October 7, 2016, MTL's secret shopper was charged $16.33 for one (1) counterfeit MTL key.

48. Attached hereto as <u>Exhibit 8</u> is a true correct copy of the receipt provided to MTL's secret shopper from Amazon on October 7, 2016 for the cost of duplicating one (1) counterfeit MTL key.

49. Upon information and belief, an owner or employee of defendant Amazon used MTL's patented key cutting machine (U.S. Patent Registration No. 6,602,030) on October 7, 2016 to duplicate a counterfeit MTL key in breach of the Agreement.

50. An MTL secret shopper purchased one (1) counterfeit key from Big Brother on October 8, 2016, as reflected on the sales receipt which was provided to MTL's secret shopper at the time of purchase.

51. In connection with a purchase from Big Brother on October 8, 2016, MTL's secret shopper was charged $20.00 for one (1) counterfeit MTL key.

52.     Attached hereto as <u>Exhibit 9</u>  is a true correct copy of the receipt provided to MTL's secret shopper from Big Brother on October 8, 2016 for the cost of duplicating one (1) counterfeit MTL key.

53.     Upon information and belief, an owner or employee of defendant Big Brother used MTL's patented key cutting machine (U.S. Patent Registration No. 6,602,030) on October 8, 2016 to duplicate a counterfeit MTL key in breach of the Agreement.

54.     An MTL secret shopper purchased one (1) counterfeit key from Golden Key on October 6, 2016, as reflected on the sales receipt which was provided to MTL's secret shopper at the time of purchase.

55.     In connection with a purchase from Golden Key on October 6, 2016, MTL's secret shopper was charged, upon information belief, $25.00 for one (1) counterfeit MTL key.

56.     Attached hereto as <u>Exhibit 10</u>  is a true correct copy of the receipt provided to MTL's secret shopper from Golden Key on October 6, 2016 for the cost of duplicating one (1) counterfeit MTL key.

57.     Upon information and belief, an owner or employee of defendant Golden Key used MTL's patented key cutting machine (U.S. Patent Registration No. 6,602,030) on October 6, 2016 to duplicate a counterfeit MTL key in breach of the Agreement.

58.     An MTL secret shopper purchased one (1) counterfeit key from World Housewares on October 7, 2016, as reflected on the sales receipt which was provided to MTL's secret shopper at the time of purchase.

59.     In connection with a purchase from World Houseware on October 7, 2016, MTL's secret shopper was charged $27.22 for one (1) counterfeit MTL key.

60.     Attached hereto as <u>Exhibit 11</u>  is a true correct copy of the receipt provided to MTL's secret shopper from World Houseware on October 7, 2016 for the cost of duplicating one (1) counterfeit MTL key.

61.     Upon information and belief, an owner or employee of defendant World Houseware used MTL's patented key cutting machine (U.S. Patent Registration No. 6,602,030) on October 7, 2016 to duplicate a counterfeit MTL key in breach of the Agreement.

62.     On January 27, 2017 and in response to the purchase of counterfeit keys from Access on November 3, 2016, counsel for plaintiff transmitted notice that plaintiff was terminating it license Agreement with Access to Lora. Attached hereto as <u>Exhibit 12</u>  is a true correct copy of plaintiff's termination notice to Lora.

63.     On January 27, 2017 and in response to the purchase of counterfeit keys from Amazon on October 7, 2016, counsel for plaintiff transmitted notice that plaintiff was terminating it license Agreement with Amazon to Yaacov. Attached hereto as <u>Exhibit 13</u>  is a true correct copy of plaintiff's termination notice to Yaacov.

64.     On January 27, 2017 and in response to the purchase of counterfeit keys from Big Brother on October 8, 2016, counsel for plaintiff transmitted notice that plaintiff was terminating it license Agreement with Big Brother to Ramnuth. Attached hereto as <u>Exhibit 14</u>  is a true correct copy of plaintiff's termination notice to Ramnuth.

65.     On January 27, 2017 and in response to the purchase of counterfeit keys from Golden Key on October 6, 2016, counsel for plaintiff transmitted notice that plaintiff was terminating it license Agreement with  Golden Key to Baruch. Attached hereto as <u>Exhibit 15</u>  is a true correct copy of plaintiff's termination notice to Baruch.

66.     On January 27, 2017 and in response to the purchase of counterfeit keys from World Housewares on October 7, 2016, counsel for plaintiff transmitted notice that plaintiff was terminating it license Agreement with World Housewares. Attached hereto as <u>Exhibit 16</u> is a true correct copy of plaintiff's termination notice to World Housewares.

67.     As of the date hereof, neither counsel for plaintiff nor plaintiff have received responses from defendants complying with plaintiff's notices of termination dated January 27, 2017, despite receiving such notices via certified U.S. mail.

68.     Defendants, without authorization or license from MTL, have willfully and intentionally used, reproduced and copied MTL's Marks in connection with their manufacturing, distributing, advertising, marketing, selling or offering to sell non-genuine copies of MTL's Products (the "Counterfeit Products"), and continue to do so.

69.     Even though the Counterfeit Products are of significantly inferior quality and workmanship, they appear superficially similar, and in some cases are superficially identical, to genuine MTL Products.

70.     At all relevant times and in furtherance of their infringing activities, defendants, without authorization or license from MTL have willfully and intentionally used and continue to use MTL's Marks and MTL's Patents in connection with Counterfeit Products.

71.     The use by defendants of MTL's Marks and the MTL's Patents on or in connection with the offering for sale, sale and distribution of Counterfeit Products is likely to cause confusion, or to cause mistake or to deceive.

72.     The Counterfeit Products are not genuine MTL Products bearing MTL's Marks or MTL Patents. MTL did not manufacture, inspect or package the Counterfeit Products, and did not

approve the Counterfeit Products for sale or distribution. Plaintiff has inspected samples of the Counterfeit Products and determined them to be counterfeit.

## COUNT I

## BREACH OF CONTRACT

73.     Plaintiff realleges and incorporates by reference the allegations set forth above.

74.     The Agreements are valid and enforceable documents.

75.     Defendants breached the terms and conditions of their Agreements when they duplicated one or more MTL keys without first requiring that customers present a valid MTL security identification card.

76.     Defendants breached the terms and conditions of the Agreement when they offered for sale and sold a counterfeit MTL key.

77.     Defendants breached the terms and conditions of the Agreement when they duplicated counterfeit MTL keys on MTL's proprietary key-cutting machine.

78.     Each of defendants' breaches of the Agreement were willful.

79.     Plaintiff has demanded, and defendants have refused to comply with, plaintiffs termination instructions and other provisions of their Agreements concerning termination, despite being duly noticed as set forth above.

80.     As a direct and proximate result of defendants' breach of their Agreements, plaintiff has been damaged in an amount no less than the liquidated damages set forth in the Agreement and is entitled thereunder to pre- and post-judgment interest at an annual rate of 9%, calculated from the date of each of the defendants' breaches.

81.     Plaintiff's exact amount of contractual damages will be determined at trial.

## COUNT II

## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114

82.     Plaintiff realleges and incorporates by reference the allegations set forth above.

83.     The trademarks comprising the MUL-T-LOCK® family of registered trademarks are inherently distinctive trademarks for, *inter alia*, locks, bolts, cylinder locks and padlocks, mortise cylinder locks, gear locks, keys, key blanks, and parts and fittings for the aforesaid, respectively.

84.     Based on MTL's extensive advertising, its extensive sales, and the extensive publicity afforded by MTL's superior position in the marketplace, the trademarks comprising the MUL-T-LOCK® family of registered trademarks have acquired secondary meaning so that any service, product or advertisement bearing the MTL Marks is immediately associated by purchasers and the public as being a product originating with MTL or offered by an affiliate of MTL.

85.     Defendants use the Mul-T-Lock name in commerce in connection with the manufacturing, distributing, advertising, marketing, selling or offering to sell non-genuine goods and services.

86.     At a minimum, defendants' acted with willful blindness to and in reckless disregard of MTL's exclusive rights to control the use of the MUL-T-LOCK® family of registered trademarks.

87.     Defendants, by infringing MTL's MUL-T-LOCK® family of registered trademarks in their manufacturing, distributing, advertising, marketing, selling or offering to sell non-genuine goods and services, create the false and misleading impression that they or their goods or services are sanctioned, assigned, or otherwise authorized by MTL when, in fact, they are not.

88.     Defendants' infringement of MTL's MUL-T-LOCK® family of registered trademarks as set forth above has resulted in defendants' unfairly benefiting from MTL's

17

advertising, promotion and profiting from the outstanding reputation of MTL and the MUL-T-LOCK® family of registered trademarks, all to the substantial and irreparable injury to the public, MTL's reputation, goodwill and sales and that of the MUL-T-LOCK® family of registered trademarks.

89.     Defendants' aforesaid acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

90.     As a direct and proximate result of Defendants' conduct, MTL has suffered damage to its valuable MTL Marks, and other damages in an amount to be proved at trial.

91.     Defendants' actions constitute willful infringement of MTL's exclusive rights in the MTL Marks in violation of 15 U.S.C. § 1114.

92.     Plaintiff has no adequate remedy at law, and will continue to be damaged by defendants' wrongful acts of trademark infringement which will continue unless this Court enjoins Defendants from such practices.

## COUNT III

## TRADEMARK COUNTERFEITING UNDER 15 U.S.C. §1114

93.     Plaintiff realleges and incorporates by reference the allegations set forth above.

94.     This is an action for trademark counterfeiting against defendants based on defendants' manufacturing, distributing, advertising, marketing, selling or offering to sell non-genuine copies for sale of Counterfeit Products.

95.     Defendants are continuously infringing and inducing others to infringe the MTL Marks by using them to advertise, promote and sell Counterfeit Products in direct competition with plaintiff.

18

96.     Defendants' counterfeiting activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of defendants' Counterfeit Products.

97.     Defendants' unauthorized sale of Counterfeit Products was done with notice and full knowledge that such acts were not authorized or licensed by MTL.

98.     Defendants' actions constitute willful infringement of MTL's exclusive rights in the MTL's Marks in violation of 15 U.S.C. § 1114.

99.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by defendants' sale of Counterfeit Products unless this Court enjoins defendants from such practices.

## COUNT IV

## TRADEMARK DILUTION UNDER 15 U.S.C. §1125(c)

100.    Plaintiff realleges and incorporates by reference the allegations set forth above.

101.    The MTL Marks are "famous marks" throughout the world and fall within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) arising from MTL's continuous and exclusive use of the MTL Marks in connection with MTL's Products and services, and such Marks became famous marks prior to defendants' conduct as alleged herein.

102.    Because MTL's Products have gained a reputation for superior quality and excellence, the MTL's Marks have gained substantial fame and reputation.

103.    Defendants' unauthorized use of the MUL-T-LOCK® family of registered trademarks in order to sell goods and services constitutes defendants' commercial use in commerce.

104.     The marks comprising the MUL-T-LOCK® family of registered trademarks have come to acquire secondary meaning indicative of origin, relationship, sponsorship, or association with MTL and its distinctive reputation in the high-security lock industry.

105.     The purchasing public is likely to attribute to MTL defendants' use of the MUL-T-LOCK® family of registered trademarks as sources of origin, authorization, or sponsorship for the goods and services ddefendants' sell and, further, purchase defendants' goods and services under the erroneous belief that defendants' goods or services are associated, sponsored, or otherwise affiliated with MTL when they are not.

106.     Defendants' acts as aforesaid are diluting the distinctive quality of the MUL-T-LOCK® family of registered trademarks in violation of Section 43 (c) of the Lanham Act, 15 U.S.C. § 1125 (c).

107.     Defendants have intentionally and willfully appropriated the trademarks of MTL and traded on MTL's reputation in an attempt to associate and affiliate itself and the goods and products they sell as being endorsed by MTL.

108.     Defendants' unauthorized use of the MTL Marks on or in connection with their Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by MTL.

109.     As a direct and proximate result of defendants' conduct, MTL has suffered damage to their valuable MTL Marks, and other damages in an amount to be proved at trial.  Plaintiff does not have an adequate remedy at law, and will continue to be damaged by defendants' wrongful acts of dilution unless this Court enjoins Defendants from such practices.

## COUNT V

### FALSE DESIGNATION OF ORIGIN AND
### FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

110.    Plaintiff realleges and incorporates by reference the allegations set forth above.

111.    As a result of the superior quality, performance and service associated with the MTL Products, the MTL Marks and Products have become widely known and have acquired a reputation for excellence throughout the world.

112.    The MTL Marks have become associated with the MTL Products, and have come to symbolize a reputation for quality and excellence.

113.    The MTL Marks have attained secondary meaning.

114.    The MTL Marks are inherently distinctive.

115.    Defendants' use of the MTL Marks on or in connection with the Counterfeit Products, as alleged above, is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation such products.

116.    Defendants' use of the MTL Marks is likely to cause members of the trade and the general consuming public to believe in error that the Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by MTL.

117.    The foregoing acts by Defendants constitute false or misleading descriptions, false advertising, and false designations of the origin or sponsorship of defendants' goods in violation of 15 U.S.C. § 1125(a).

118.    Defendants' unauthorized use of the MTL Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized, sponsored, approved, endorsed, or licensed by MTL.

119.    Defendants have used and continue to willfully use the MTL Marks with the intent to confuse, mislead, or deceive customers, purchasers, and members of the trade and general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and with the intent to trade on Plaintiff's reputation and substantial goodwill.

120.    As a direct and proximate result of defendants' conduct, MTL has suffered damage to the MTL Marks, and other damages in an amount to be established at trial.

121.    Plaintiff does not have an adequate remedy at law, and will continue to be damaged by defendants' sale of Counterfeit Products bearing the alleged false designations, unless this Court enjoins defendants from such practices.

## COUNT VI

## COMMON LAW TRADEMARK INFRINGEMENT

122.    Plaintiff realleges and incorporates by reference the allegations set forth above.

123.    As a result of the superior quality, performance and service of the MTL Products, the MTL Marks and the MTL Products have become widely known and have acquired a reputation for excellence throughout the world.

124.    The MTL Marks have become associated with the MTL Products, and have come to symbolize a reputation for quality and excellence.

125.    The MTL Marks have attained secondary meaning.

126.    The MTL Marks are inherently distinctive.

127.    Defendants' unauthorized use of the MTL Marks is likely to and does allow defendants to pass off their Counterfeit Products to members of the trade and the general public, all to the detriment of MTL and the unjust enrichment of defendants.

128.    The foregoing acts by defendants have caused and continue to cause confusion as to the source and sponsorship of defendants' Counterfeit Products.

129.     Defendants' acts constitute willful infringement of MTL's exclusive rights in the MTL Marks, in violation of state common law.

130.     As a direct and proximate result of defendants' conduct, MTL has suffered damage to the valuable MTL Marks, and other damages in an amount to be established at trial.

131.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of Counterfeit Products unless this Court enjoins defendants from such practices.

**COUNT VII**

**COMMON LAW UNFAIR COMPETITION**

132.     Plaintiffs realleges and incorporates by reference the allegations set forth above.

133.     As a result of the superior quality, performance and service of the MTL Products, MTL's Marks and Products have become widely known and have acquired a reputation for excellence throughout the world.

134.     The MTL Marks have become associated with MTL's Products, and have come to symbolize a reputation for quality and excellence.

135.     The MTL Marks have attained secondary meaning.

136.     The MTL Marks are inherently distinctive.

137.     Defendants, with full knowledge of the fame of the MTL Marks, intended to and did trade on the goodwill associated with the MTL Marks.

138.     Defendants' acts have and continue to mislead and deceive the public as to the source of defendants' Counterfeit Products, permit and accomplish palming off of defendants' goods as those of MTL's, and falsely suggest a connection with MTL.  Therefore, defendants have committed unfair competition in violation of state common law.

139.    As a direct and proximate result of defendants' conduct, MTL has suffered damage to the valuable MTL Marks, and other damages in an amount to be established at trial.

140.    Plaintiff does not have an adequate remedy at law, and will continue to be damaged by defendants' sale of Counterfeit Products unless this Court enjoins defendants from such practices.

### COUNT VIII

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 360(1)

141.    Plaintiff realleges and incorporates by reference the allegations set forth above.

142.    Defendants' illegal acts as described above have caused damage to MTL by tarnishing MTL's valuable reputation and diluting or blurring the distinctiveness of the MTL Marks in violation of New York General Business Law § 360(1).

143.    Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of Counterfeit Products unless this Court enjoins defendants from such practices.

### COUNT IX

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 *et seq.*

144.    Plaintiff realleges and incorporates by reference the allegations set forth above.

145.    Defendants, without MTL's authorization or consent, and having knowledge of MTL's well-known and prior rights in the MTL Marks and the MTL Patents, have distributed, advertised, offered for sale or sold Counterfeit Products employing MTL's Marks to the consuming public in violation of New York General Business Law § 349 *et seq.*

146.     Defendants' sale of nearly exact copies or simulations of MTL's Marks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of defendants' Counterfeit Products, and is likely to deceive the public into believing

Counterfeit Products being sold by defendants originate from, are associated with, or are otherwise authorized by MTL.

147.    Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

148.    Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of Counterfeit Products unless this Court enjoins defendants from such practices.

## COUNT X

### IMPOSITION OF A CONSTRUCTIVE TRUST
### UPON THE ILLEGAL PROFITS OF ALL DEFENDANTS

149.    Plaintiff realleges and incorporates by reference the allegations set forth above.

150.    Defendants' conduct constitutes deceptive, fraudulent and wrongful conduct in the nature of passing off Counterfeit Products as genuine MTL Products approved or authorized by MTL.

151.    By virtue of their wrongful conduct, Defendants have illegally received money and profits that rightfully belong to plaintiff.

152.    Upon information and belief, defendants' hold the illegally received money and profits in the form of bank accounts, real property or personal property that can be located and traced.

153.    Defendants hold the money and profits they have illegally received as constructive trustees for the benefit of plaintiff.

## COUNT XI

### DEMAND FOR AN ACCOUNTING FROM ALL DEFENDANTS

154.     Plaintiff realleges and incorporates by reference the allegations set forth above.

155.     Plaintiff is entitled, pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 271 *et seq*., to recover any and all profits of defendants that are attributable to their acts of infringement.

156.     Plaintiff is entitled, pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 271 *et seq*., to actual damages or statutory damages sustained by virtue of defendants' acts of infringement.

157.     The amount of money due from defendants to plaintiff is unknown to plaintiff and cannot be ascertained without a detailed accounting by defendants of the precise number of units of infringing Counterfeit Products offered for distribution and distributed by defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment against each of the defendants as follows:

1.     That defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently:

   a)     from using in any manner the MTL Marks, alone or in combination with any word or words, or material or materials which so resemble each said trademark or t as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product not MTLs, or not authorized by MTL to be sold in connection with each of the MTL Marks;

   b)     from passing off; inducing, or enabling others to sell or pass off any product as and for products produced by MTL, not MT''s, or not produced under

26

the control and supervision of MTL and approved by MTL for sale under the MTL

Marks;

c)      from committing any acts that cause purchasers to believe that

defendants' products are those sold under the control and supervision of MTL, or

sponsored or approved by, or connected with, or guaranteed by, or produced under

the control and supervision of MTL;

d)      from further diluting and infringing the MTL Marks a and damaging

MT'’s goodwill;

e)      from shipping, delivering, distributing, returning or otherwise

disposing of, in any manner, products or inventory not manufactured by or for

MTL, nor authorized by MTL to be sold or offered for sale, and which bear or

resemble any of the MTL Marks;

f)      from otherwise competing unfairly with MTL or any of their

authorized licensees in any manner; and

g)      from assisting, aiding, or abetting any other person or business entity

in engaging in or performing any of the activities referred to in the above

subparagraphs (a) through (f).

2.      That Defendants be required to deliver up to plaintiff any and all products,

guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches,

receptacles, advertising matter, promotional, and other materials in the possession

of defendants or under their control bearing any of the MTL Marks, or each of them,

alone or in combination with any other words or materials, or used in connection

with the advertising, offering for sale or sale of products not MTL's, or not made under the authorization and control of MTL;

3.      That Defendants be required to supply plaintiff with a complete list of entities from whom they purchased and to whom they distributed and/or sold products falsely bearing the MTL Marks or products not authorized by MTL to be sold in connection with each of said marks or patents;

4.      That Defendants be required to deliver up for destruction their entire inventory of said products bearing any of the aforesaid infringing trademarks;

5.      That defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon plaintiff a written report under oath setting forth in detail the manner in which defendants have complied with paragraphs 1 through 4, *supra*;

6.      That defendants account for and pay over to plaintiff all profits realized by Defendants by reason of defendants' unlawful acts herein alleged and that the amount of disgorgement for infringement of MTL's registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law and that the Court impose whatever temporary, preliminary and final equitable relief is necessary to achieve the foregoing, including but not limited to, the imposition of a constructive trust;

7.      That plaintiff be awarded actual damages in an amount to be determined at trial and that the amount of damages for infringement of MTL's registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law;

8.      That plaintiff be awarded statutory damages of $1,000,000 for defendants' willful counterfeiting of each of the MTL Marks;

9.      That Plaintiff be awarded reasonable attorneys' fees and costs; and

10.     That Plaintiff have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act, 35 U.S.C. §281 et seq., and state statutory or common law.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Mul-T-Lock USA, Inc. demands trial by jury in this action of all issues so triable.

ARCHER & GREINER P.C.

By: _____
        Joel G. MacMull
44 Wall Street, Suite 1285
New York, New York 10005
Tel.: 201-498-8544
Fax: 201-342-5511
jmacmull@archerlaw.com

*Attorneys for Plaintiff, Mul-T-Lock, USA, Inc.*

Dated: June 25, 2017

115864891v4